AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>a black Apple iPhone in a translucent brown phone case<br>seized from Chris Oliver on August 3, 2021. | Case No.   21-9274 MB |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

### As further described in Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### As set forth in Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before   9/3/2021   *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona.</u>

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for  30  days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   8/20/2021 @ 12:19pm

*Judge's signature*

City and state: <u>Phoenix, Arizona</u>

<u>Honorable Eileen S. Willett, U.S. Magistrate Judge</u>
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a black Apple iPhone in a translucent brown phone case, which was seized from Chris OLIVER on August 3, 2021, incident to his arrest. The SUBJECT CELLULAR TELEPHONE is currently located at 40 N Central Ave, Suite #1000, Phoenix, Arizona 85004.



This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1.  Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE, that relate to violations of 18 U.S.C. § 371 – Conspiracy to Make False Statements in Acquisition of Firearms, 18 U.S.C. §§ 922(a)(1)(A), 923(a) and 924(a)(1)(D) – Dealing Firearms without a License, 18 U.S.C. § 924(a)(1)(A) –False Statement During Purchase of a Firearm, including

   a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of firearms, firearms parts or accessories, or ammunition;

   b.  all information related to buyers or sources of firearms, firearms parts or accessories, or ammunition (including names, addresses, telephone numbers, locations, or any other identifying information);

   c.  all bank records, checks, credit card bills, account information, or other financial records;

   d.  all information regarding the receipt, transfer, possession, transportation, or use of proceeds of firearms, firearms parts or accessories, or ammunition;

   e.  any information recording schedule or travel;

   f.  records of or information about the cellular telephone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

   g.  evidence of the attachment to the cellular telephone of another storage device or similar container for electronic evidence;

   h.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the cellular telephone;

   i.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

     j.   contextual information necessary to understand the evidence described in this attachment.

2.     Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>a black Apple iPhone in a translucent brown phone case<br>seized from Chris Oliver on August 3, 2021. | Case No.   21-9274 MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to Make False Statements in Acquisition of Firearms |
| 18 U.S.C. §922(a)(1)(A),<br>923(a) and 924(a)(1)(D) | Dealing Firearms without a License |
| 18 U.S.C. §924(a)(1)(A)- False Statement During Purchase of a Firearm | |

The application is based on these facts:

**See attached Affidavit from Special Agent Hannah Carroll.**

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Coleen Schoch

HANNAH CARROLL   Digitally signed by HANNAH CARROLL
Date: 2021.08.20 11:53:19 -07'

*Applicant's Signature*

Hannah Carroll, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _8/20/2021 @ 12:19pm_

*Judge's signature*

City and state: _Phoenix, Arizona_

Honorable Eileen S. Willett, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a black Apple iPhone in a translucent brown phone case, which was seized from Chris OLIVER on August 3, 2021, incident to his arrest. The SUBJECT CELLULAR TELEPHONE is currently located at 40 N Central Ave, Suite #1000, Phoenix, Arizona 85004.



This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1.      Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE, that relate to violations of 18 U.S.C. § 371 – Conspiracy to Make False Statements in Acquisition of Firearms, 18 U.S.C. §§ 922(a)(1)(A), 923(a) and 924(a)(1)(D) – Dealing Firearms without a License, 18 U.S.C. § 924(a)(1)(A) –False Statement During Purchase of a Firearm, including

   a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of firearms, firearms parts or accessories, or ammunition;

   b. all information related to buyers or sources of firearms, firearms parts or accessories, or ammunition (including names, addresses, telephone numbers, locations, or any other identifying information);

   c. all bank records, checks, credit card bills, account information, or other financial records;

   d. all information regarding the receipt, transfer, possession, transportation, or use of proceeds of firearms, firearms parts or accessories, or ammunition;

   e. any information recording schedule or travel;

   f. records of or information about the cellular telephone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

   g. evidence of the attachment to the cellular telephone of another storage device or similar container for electronic evidence;

   h. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the cellular telephone;

   i. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

j.   contextual information necessary to understand the evidence described in this attachment.

2.     Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

## **AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

Your Affiant, Hannah Carroll, being first duly sworn, hereby deposes and states as follows:

## I.      **INTRODUCTION AND AGENT BACKGROUND**

1.      Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephone further described in Attachment A (hereafter "SUBJECT CELLULAR TELEPHONE"), and in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, United States Department of Justice, and have been since June 2018. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the ATF National Academy's Special Agent Basic Training. Prior to becoming a Special Agent, I was a sworn law enforcement officer with the Louisville Metro Police Department in Louisville, Kentucky, for eight years. I am currently assigned to the ATF Phoenix Field Office.

3.      During and prior to my tenure with ATF, I have been involved in investigations involving federal firearms and narcotics trafficking cases. I have reviewed investigative reports and had conversations with senior Special Agents who have advised of common firearms trafficking schemes and explained their methods of operations. I have become knowledgeable in the methods and modes used by firearms trafficking operations, as well as the language and patterns used. I am aware of techniques that are used to attempt to deter and hinder law enforcement investigations of firearms trafficking schemes, including the utilization of multiple cellular phones, planned distribution schemes, the use of false and/or fictitious identities, and the use of "straw" purchasers.

4.     The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; information provided by a confidential source; analysis of public records; analysis of social media information; and analysis of financial records.

5.     Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all relevant facts known to law enforcement officers.

## II.    BASIS FOR PROBABLE CAUSE

6.     September 2, 2020, I received an ATF referral from the Crime Gun Intelligence Center that Chris OLIVER was suspected of firearms trafficking.

7.     Through the course of an investigation by ATF, OLIVER was found to have personally purchased approximately 97 firearms from 15 federal firearms licensees between September 2019 and November 2020, for approximately $54,000.

8.     Of the 97 firearms purchased by Oliver himself, 15 have been recovered by law enforcement in Arizona and California with short times to crime of 8–260 days.

9.     A financial analysis showed that OLIVER lacked income to support these purchases, approximately 90% of which were made in cash. This analysis also showed that OLIVER engaged in frequent travel from Arizona to California, Nevada, and Texas.

10.     Through the investigation, ATF also found that OLIVER solicited other individuals to purchase at least six firearms from federal firearms licensees during that same time. Of those six firearms, four have been recovered by law enforcement in Arizona and California.

11.    A search warrant was issued on May 18, 2021, for OLIVER's known residences. The search warrant was executed on May 27, 2021. No firearms were recovered from either location, although ATF did locate firearms parts and accessories and receipts for firearms purchases.

12.    On August 3, 2021, a grand jury indicted OLIVER and two co-defendants, Michael KELLY and Dion DELPINO for violations of 18 U.S.C. § 371 – Conspiracy to Make False Statements in Acquisition of Firearms and 63 separate violations of 18 U.S.C. § 924(a)(1)(A)- False Statement During Purchase of a Firearm. OLIVER was also indicted for violations of 18 U.S.C. §§ 922(a)(1)(A), 923(a) and 924(a)(1)(D) – Dealing Firearms without a License. The indictment alleges that KELLY and DELPINO purchased firearms at the request of and on behalf of OLIVER.

13.    Later that day, ATF with assistance of the Phoenix Police Department, arrested OLIVER at Phoenix Sky Harbor Airport. At the time of his arrest, OLIVER had in his hand the SUBJECT CELLULAR TELEPHONE.

14.    Your affiant believes that the SUBJECT CELLULAR TELEPHONE may contain information about how, to whom OLIVER sold or otherwise disposed of the 81 remaining firearms that he is known to have purchased from federal firearms licensees in Arizona.

15.    OLIVER was interviewed by ATF during the investigation (prior to indictment). OLIVER stated that he sold guns for profit using websites like Armslist and (the now-defunct) Backpage Guns. OLIVER stated that he did not know the buyers to whom he sold, that he did not use bills of sale, and that he deletes his email communications after the sales.

16.    Your affiant believes that the SUBJECT CELLULAR TELEPHONE may contain information about firearms that OLIVER listed or sold using Backpage Guns,

Armslist, and similar websites or applications, along with when, how, and to whom, and for how much he sold them.

17.     Although OLIVER stated that he deleted relevant email communications, OLIVER may have communicated with buyers by other means than email. Based on my training and experience, text messaging and messaging applications like WhatsApp and Snapchat are popular with those who sell firearms illegally. In addition, OLIVER may not have deleted those emails, or all of those emails. Alternatively, even if OLIVER did delete them, ATF may be able to recover them from the SUBJECT CELLULAR TELEPHONE using forensic methods.

18.     Based on my training and experience, OLIVER may have communicated with buyers or individuals who connected him to potential buyers using email, text messaging, and/or messaging applications like WhatsApp and Snapchat, which information may be contained on or recoverable from the SUBJECT CELLULAR TELEPHONE.

19.     Based on my training and experience, OLIVER may have communicated with other individuals that he recruited or attempted to recruit to purchase firearms on his behalf, using email, text messaging, and/or messaging applications like WhatsApp and Snapchat, which information may be contained on or recoverable from the SUBJECT CELLULAR TELEPHONE.

20.     Your affiant also believes that the SUBJECT CELLULAR TELEPHONE may contain information about additional firearms that OLIVER purchased using Backpage Guns, Armslist, or similar websites or applications, as well as when, how, from whom, and for how much he purchased them.

21.    Your affiant believes that the SUBJECT CELLULAR TELEPHONE may contain information regarding or that could lead ATF to additional firearms that OLIVER purchased from federal firearms licensees in Arizona during the indictment period, but of which ATF is not currently aware.

22.    The SUBJECT CELLULAR TELEPHONE is currently in the lawful possession of ATF. It was seized incident to OLIVER's arrest pursuant to a warrant issued on August 3, 2021. ATF arrested OLIVER on August 3, 2021, at Phoenix Sky Harbor Airport. At the time of his arrest, OLIVER was holding SUBJECT CELLULAR TELEPHONE in his hand. Therefore, while ATF might already have all necessary authority to examine the device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the device will comply with the Fourth Amendment and other applicable laws.

23.    The SUBJECT CELLULAR TELEPHONE is currently in storage at 40 N Central Ave, Suite #1000, Phoenix, Arizona 85004.  In my training and experience, I know that the SUBJECT CELLULAR TELEPHONE has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONE first came into the possession of ATF.

### III.    ITEMS TO BE SEIZED

24.    Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT CELLULAR TELEPHONE.

25.    Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

26.     Firearms traffickers commonly use cellular telephones to communicate with other firearm traffickers and customers about firearm-related activities through the use of telephone calls, text messages, email, social media, and other internet- and application-based communication forums. Moreover, firearms traffickers commonly use other capabilities of cellular telephones to further their firearms trafficking and money laundering activities. Therefore, evidence related to firearm trafficking activity and money laundering activity is likely to be found on the SUBJECT CELLULAR TELEPHONE.

27.     As previously set forth in this Affidavit, the target of this investigation has used electronic storage media to send messages and to post advertisements regarding potential purchases and sales of firearms. By training and experience, your Affiant also knows that telephones are commonly used to further firearms trafficking. Cellular telephones are the primary source of communication for firearms traffickers. Therefore, your Affiant believes that evidence of criminal activity, including information regarding straw purchasing by the subject, information regarding straw purchasing by others on behalf of the subject, and potential current locations of firearms that have traveled out of legal commerce into illegal commerce, will be found on SUBJECT CELLULAR TELEPHONE.

28.     In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONE.

## IV.   DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

29.     As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONE. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

30.  *Probable cause.*  Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONE for at least the following reasons:

a.  Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

b.  Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

c.  Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little

or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

        d.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

     31.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONE because:

        a.     Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

        b.     As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware

detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.      A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

d.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.  For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

32.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONE, including the use of computer-assisted scans.

33.     *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V.   **CONCLUSION**

34.   Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 18 U.S.C. §371- Conspiracy to Make False Statements in Acquisition of Firearms, 18 U.S.C. §922(a)(1)(A), 923(a) and 924(a)(1)(D)- Dealing Firearms without a License, 18 U.S.C. §924(a)(1)(A)- False Statement During Purchase of a Firearm, are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONE further described in Attachment A.

HANNAH CARRO
Digitally signed by HANNAH CARROLL
Date: 2021.08.20 11:54:52 -07'
_____
Special Agent Hannah Carroll
Bureau of Alcohol, Tobacco, Firearms and Explosives

20
Subscribed and sworn to before me this _____ day of August, 2021.

_____
HONORABLE EILEEN S. WILLETT
United States Magistrate Judge